No. 30,915.

The Phœnix Indemnity Company, *Appellee,* v. The Barton Torpedo Company et al. (The Shell Petroleum Corporation, *Appellant*).

(19 P. 2d 739.)

Opinion filed March 11, 1933.

*Paul J. Wall, Carl I. Winsor* and *John E. Boyer,* all of Wichita, for the appellant.

*J. B. McKay,* of El Dorado, and *A. B. Mitchell,* of Lawrence, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J. This is an action in tort by an insurance carrier having been theretofore adjudged in a workmen's compensation case to pay the dependents of a deceased workman a definite award, to recover on its behalf and on behalf of the dependents damages from third parties for their negligence which caused the death of the workman. The demurrers of the defendants to the petition were overruled. A plea in abatement filed by one of the defendants, The Shell Petroleum Corporation, was also overruled. This defendant appeals, alleging error in both these rulings.

The petition alleged that plaintiff was an insurance carrier and had executed and delivered to one W. H. Schwartz a policy insuring him against liability under the workmen's compensation law, that Schwartz had by written contract with The Shell Petroleum Corporation engaged to drill a certain oil well in Greenwood county, Kansas, the company "to furnish the drilling rig, casing, fuel and water, and that when said well reached the oil-bearing sand said Schwartz should shut down, notify Shell Petroleum Corporation thereof and that it should thereupon take full charge of the well and of the operations thereat, and direct, manage and control the drilling into, shooting and testing of the sand and placing the well on the pump, paying said Schwartz for the use of his tools and drilling equipment and of the workmen employed by him for all time so spent the sum of $80 per day of twenty-four hours." That when oil-bearing sand was reached by Schwartz, on March 19, 1929, the petroleum company took full charge of the well, tools and equipment, and managed, controlled and supervised the completion of the well, including drilling into and shooting the oil-bearing sand, that it employed the Barton Torpedo Company to shoot the well with an explosive, and the defendant Pearl Blair represented the torpedo company and he acted jointly with the petroleum company representatives, Bickle and Lingo, in lowering the container, and then they fastened the reel to the fly wheel of the engine used in the drilling for the purpose of withdrawing the torpedo line from the hole; that Logan Herbert, the tool dresser in the employ of Schwartz, was di-

rected by those in charge to start the engine, and when he did so the reel came loose from the flywheel and struck him, inflicting a serious wound from which he died.

The petition gives details of negligence, names the dependents, specifies the award of the compensation commissioner as $4,350 against Schwartz and plaintiff insurance company, which the latter is regularly paying, attaches a copy of the award and prays for a judgment of $10,000 for the benefit of itself and the dependents, as their interests may appear.

A general demurrer to this petition was overruled and then the petroleum company filed a plea in abatement, attaching a copy of the contract between the petroleum company and Schwartz, calling special attention to the part of that contract which obligated Schwartz to procure an insurance contract under the workmen's compensation law, and that no right of action was given such insurance carrier against the petroleum company. The plea further alleged that the petroleum company, Schwartz and Herbert were all operating under the workmen's compensation law at the time of the accident. The errors assigned by the appellant are in overruling the demurrer and the plea in abatement.

The difficulty and confusion which has arisen in the case is in the apparent shifting of position by the Shell Petroleum Corporation since the writing of the contract between that company and Schwartz. The contract on its face is unmistakably designed to eliminate the company from liability under the workmen's compensation law. Throughout the entire contract the company is regularly and frequently referred to as the "owner," and Schwartz as the "contractor." The attitude of the appellant in the demurrer, the plea in abatement and the brief, presented here on review, is not upon the theory of appellant being the owner, but as being the principal contractor and Schwartz the subcontractor.

The principal contractor and the subcontractor can both be made liable under the workmen's compensation law, while an owner, generally speaking, is not liable under that law. R. S. 1931 Supp. 44-503 in the first paragraph (a) makes such principal contractor liable to the workman employed by the subcontractor as if employed immediately by him.

Doubtless the trial court in overruling the demurrer and the plea in abatement regarded the contract as one between an owner and contractor, as it especially emphasized the former. However, it

enumerates privileges and duties which go much farther than any ordinary owner could or would reasonably go, such as furnishing the drilling rig and other equipment, also taking full charge of the well and the operations thereat and managing the shooting and testing of the well and assuming the responsibility until the shot hole is cased off. These rights and privileges reserved to itself in contracting with Schwartz make the petroleum company more nearly in line with the definition of a principal contractor, as defined in the first pragraph of the section above cited, than an owner, as it is regularly denominated in the contract.

The requirement of the contract that Schwartz procure a $10,000 bond from an insurance carrier to cover injuries to employees and servants of Schwartz under the workmen's compensation law and providing a failure to secure the same within ten days would constitute a breach of the contract, plainly recognized a legal liability for such injuries on the part of the petroleum company which it was attempting by its contract to avoid.

The very evident import of the first paragraph of the section of the statute above cited was for the protection of the workman and to enable him to reach the principal contractor as well as the subcontractor and his bondsman, and if Schwartz and his insurance carrier in this case should both have happened to be insolvent the dependents of the deceased workman could undoubtedly have reached the petroleum company as the principal contractor and made it liable, notwithstanding the evident design exhibited in the contract was to avoid such liability.

In the case of *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219, the oil company contracted with another party to erect a derrick for the purpose of using it in drilling an oil well at that place. One of the workmen fell off the derrick and was injured, and the court held the work of building the derrick was part of the company's business within the meaning of R. S. 44-503, and the company letting the contract was liable for compensation. It was said in the opinion:

"The statute was enacted for the very purpose of giving employees of the contractor remedy against the principal, and the court has so held. (*Spencer v. Marshall*, 107 Kan. 264, 191 Pac. 468.)" (p. 722.)

This brings us to the all-important question in this case as to whether a party liable under the workmen's compensation law can be made liable as a third party in a tort action for the same injury.

This exact question was before this court in the case of *Leebolt v. Leeper*, 128 Kan. 61, 275 Pac. 1087, and it was there held—

". . . that the injured workman's immediate employer was a subcontractor, and that under the provisions of the workmen's compensation act (R. S. 44-501 *et seq.*) he was limited in recovery to the provisions of that act, and could not maintain an action for damages against the general contractor with whom his immediate employer had contracted." (Syl.)

This action, as well as that just cited, was commenced under the provisions of R. S. 1931 Supp. 44-504, authorizing the bringing of actions for damages by the injured party or his employer against third parties, "other than the employer," prescribing the rights to do so as between the employee and employer within a certain period, and it has been definitely held that this section was intended for the benefit and guidance of the employer and employee and was not designed to relieve or affect a third party who negligently injured an employee. In the case of *Acock v. Kansas City Power & Light Co.*, 135 Kan. 389, 10 P. 2d 877, it was held:

"The provisions of our workmen's compensation act (R. S. 44-504) are intended for the benefit and guidance of employer and employee operating under the act. They are not designed to relieve from liability a third party who negligently injured the employee. . . ." (Syl. ¶ 1.)

Reference is made in this case to the ruling along the same line in the case of *Jolley v. United Power & Light Corp.*, 131 Kan. 102, 289 Pac. 962. Both of these cases were actions for damages against third parties and did not include any of the employers of the injured party, and the defendants therein complained of failure of employer and employee to strictly follow the provisions of section R. S. 44-504. Appellee cites both these cases in support of its theory that the Shell Petroleum Corporation was a third party, for the reason that it was not a party to the compensation case and award, urging that it cannot possibly be liable in or under the workmen's compensation case, because that case is now closed and no liability has attached, and that at most it was only a guarantor is case Schwartz and his insurance carrier were financially unable to respond and pay the compensation award. If that were the correct test as to whether or not the principal contractor was a third party, it would in effect, place the matter at the option of the workman and the subcontractor whether the principal contractor would be liable under the compensation law or in an action in tort. No such options exist under the compensation law, and the fact that the principal con-

tractor has not been made liable and is only a guarantor under the compensation law does not eliminate the principal contractor from the list of those that are liable thereunder, nor render it possible for the principal contractor to be a third party.

It is not contended by the appellant that the Barton Torpedo Company, employed by the Shell Petroleum Corporation to shoot the well, might not be a third party and liable for the negligence alleged. The appellee then concludes in its reasoning that the Torpedo Company, being the servant of the Shell Petroleum Corporation, the negligence of the servant is in law imputed to the master, citing *Railroad Co. v. Madden,* 77 Kan. 80, 93 Pac. 586, where that general rule was applied by the court to work that was particularly dangerous to others not connected with the work. Appellee also cites a case where the compensation law was applicable, and it was there held:

"When an employee and his employer are within the provisions of the workmen's compensation act and the employee is injured by the negligence of a third person, the employee, or his dependents, if the injury result in death, may proceed to recover compensation from the employer and at the same time may maintain an action for damages against the third party whose negligence caused the injury." (*Moeser v. Shunk,* 116 Kan. 247, syl. ¶ 3, 226 Pac. 784.)

In that case the injured workman was driving a truck for his employer, both operating under the workmen's compensation law, and while so driving the truck had a collision on account of the negligence of one Shunk, having no connection with the business of the workman or his employer. It may be admitted that the general rule is as urged by the appellee, as to imputing the negligence of the servant to the master where the relation of master and servant exists, but does that common law or general rule supersede the special and specific provisions limiting the liability of those operating under the workmen's compensation law? We think not. The first section of the workmen's compensation law, R. S. 1931 Supp. 44-501, after outlining the purpose of the act states: "Save as herein provided no such employer shall be liable for any injury for which compensation is recoverable under this act." This same sentence was contained in the first section of the original act in this state and was construed in *Shade v. Cement Co.,* 92 Kan. 146, 139 Pac. 1193, as follows:

"The original workmen's compensation act (Laws 1911, ch. 218, as amended

by Laws 1913, ch. 216) leaves an employee in industries within its purview no other remedy than the one provided by the act, where neither the employer nor employee has filed a statement of his election not to accept thereunder." (Syl. ¶ 1.)

This ruling was later confirmed in *McRoberts v. Zinc Co.*, 93 Kan. 364, 144 Pac. 247, and subsequent decisions.

Notwithstanding the designation in the contract of the Shell Petroleum Corporation as the owner, the substance and contents of the entire contract attached to the plea in abatement and the allegations of the petition, which must at this time be taken as true, show that corporation to be the principal contractor and liable under the compensation law, but not liable in an action in tort for the negligence causing the injury for which the compensation award had been made against the subcontractor and his insurance carrier.

For the reasons herein stated we think it was error to overrule the demurrer to the petition and the plea in abatement.

The judgment is reversed, and the cause is remanded with directions to sustain the demurrer to the petition.