JOHN V. BUNNER v. SEBASTIAN PATTI, FLEISHER ENGINEERING & CONSTRUCTION COMPANY, and RING CONSTRUCTION COMPANY, Appellants.—121 S. W. (2d) 153.

Court en Banc, November 16, 1938.

*Leo T. Schwartz* and *Maurice J. O'Sullivan* for appellants.

*Cliff Langsdale* and *Charles V. Garnett* for respondent.

ELLISON J.—This is a common-law action for damages for in-juries sustained by the plaintiff-respondent through the alleged neg-ligence of the servants of defendants-appellants. He recovered a judgment slightly in excess of $7500. The defense made was that all the parties involved were under the Workmen's Compensation Act, and that the respondent's remedy thereunder was exclusive. The several appellants jointly were the general contractors for the erec-tion of the Municipal Auditorium built by Kansas City. The re-spondent was an employee of a subcontractor. Employees of the general contractors negligently unloaded from a truck on the prem-ises the metal bucket of a steam shovel so that it rolled against re-spondent and injured him. The accident and all the parties were within the Compensation Act, and respondent collected compensa-tion from his immediate employer. But he contends he can also maintain this damage suit against the appealing general contractors as "third persons," because his own immediate employer carried lia-bility insurance. The circuit court sustained that contention, over-ruling appellants' demurrer to the evidence, and that ruling is now presented for review on this appeal. This calls for a construction of several sections of the Compensation Act.

The Missouri Workmen's Compensation Act is Chapter 28, Re-vised Statutes 1929, sections 3299 to 3376 (Mo. Stat. Ann., Chap. 28, pp. 8229 to 8294). It was enacted by the General Assembly by Laws 1925, page 375, but on petition under Section 57, Article IV of the Constitution was referred to the people and approved at a general election held in November, 1926. We look back to those dates in considering what statutes and decisions of other states may have in-fluenced our legislation here.

The general scope of the law with respect to the persons bound and the liability imposed may be sketched as follows. Under Section 3300 all employers and employees, except as in the chapter otherwise pro-vided, are conclusively presumed to have elected to accept the pro-visions thereof and to furnish and accept, respectively, compensa-tion as therein provided, unless written notice to the contrary be filed with the Commission. Under Section 3301, if both employer and employee are under the law, the employer is liable for compensation irrespective of negligence, but is released from all other liability what-soever; and the employee's right to compensation excludes all other rights and remedies except such as are not provided for by the chap-ter. Under Sections 3304 and 3305 an employer is one using the service of another for hire, and an employee is a person in the ser-vice of an employer under any contract of hire. But the four sub-sections of Section 3308 create certain *constructive* relationships of

280

employer and employee where there is no contract of hire and exempt the employer from liability for compensation on condition. Section 3309 permits the employee to sue at common law by subrogee when his injuries were caused by a "third person." We set out below the statutory provisions bearing most directly on this controversy.

Section 3301 (Mo. Stat. Ann., p. 8232), so far as applicable here, provides:

"If both employer and employe have elected to accept the provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish compensation . . . for personal injury . . . of the employe by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employe or any other person. The rights and remedies herein granted to an employe, shall exclude all other rights and remedies of such employe, . . . at common law or otherwise, on account of such accidental injury . . . except such rights and remedies as are not provided for by this chapter. . . ."

Subsections (c) and (d) of Section 3308 (Mo. Stat. Ann., p. 8242), provide:

"(c)   The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employes of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work."

"(d)   In all cases mentioned in the preceding subsections, the immediate contractor or subcontractor shall be liable as an employer of the employes of his subcontractors. All persons so liable may be made parties to the proceedings on the application of any party. The liability of the immediate employer shall be primary, and that of the others secondary in their order, and any compensation paid by those secondarily liable may be recovered from those primarily liable, with attorney's fees and expenses of the suit. Such recovery may be had on motion in the original proceedings. *No such employer shall be liable as in this section provided, if the employe was insured by his immediate or any intermediate employer.*" (Italics ours.)

Section 3309 (Mo. Stat. Ann., p. 8244), so far as applicable here provides:

"When a third person is liable to the employe . . . for the injury . . . the employer shall be subrogated to the right of the employe . . . against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employe, . . . but such employer may recover any amount which such employe . . . would have been entitled to

recover. Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employee, . . . and shall be treated as an advance payment by the employer, on account of any future installments of compensation.''

Addressing ourselves first to two preliminary matters. It will be noticed the word immediate is used three times in subsection (d) of Section 3308. It means: ''next in line or relation; directly connected . . .; not secondary or remote.'' [Webster's New International Dictionary. (2 Ed.).] As it appears the first time, qualifying the words contractor or subcontractor, it must refer to the contractor directly connected with the *job* or division thereof involved in the accident. It cannot mean the contractor nearest in relation to the injured *employee,* for the clause declares this ''immediate'' contractor shall be liable to the employees of his subcontractors, thus showing the subsection contemplates an intermediate contractor nearer in relation to the injured employee. In other words, the immediate contractor would be a remote employer as regards employees of subcontractors. But when the word immediate appears the second and third times in the subsection it qualifies the word *employer,* and plainly enough signifies the direct employer of the injured employee. So it cannot be doubted that the appellants here as remote or statutory employers of the respondent would have been secondarily liable to him for compensation under this subsection (d) but for the concluding sentence thereof, which exempted them from such liability because respondent had been insured by his immediate employer.

Further, while Section 3309 provides that if the employee has a cause of action for his injuries against a third person his employer shall be subrogated thereto, yet it is settled that the employee also may sue, independent of the statute, or the two may sue together; and this is true notwithstanding the employee has already claimed and collected compensation under the Act for the same injuries from his employer. [Anzer v. Humes-Deal Co., 332 Mo. 432, 58 S. W. (2d) 962.] Consequently, the respondent had the right to maintain the instant damage suit if the appellants were ''third persons'' within the meaning of the Act.

We are, therefore, squarely confronted with the single question whether the employee of a subcontractor if negligently injured by the general contractor can sue the latter for damages at common law as a third person and at the same time collect compensation from his immediate employer under the Compensation Act—when the immediate employer carries liability insurance covering the casualty and all the other facts bring the case within the Compensation Act. The respondent takes the affirmative on that proposition, con-

.tending that the last sentence of subsection (d) of Section 3308, aforesaid, makes the remote employer a stranger to the employment or a "third person" within the meaning of Section 3309, supra, so that he may be sued as an outsider. The question has never been decided by this court. It has been passed upon twice by the Courts of Appeals in this State. The first time the St. Louis Court of Appeals held the employee could maintain the damage action, Langston v. Selden-Breck Construction Co., 225 Mo. App. 531, 57 S. W. (2d) 474. The second time the same court overruled that decision, holding the contrary in Wors v. Carlton, 95 S. W. (2d) 1199. The Wors case is now pending on a writ of certiorari in this court en banc.

Counsel for respondent and others filed a brief here as *amici curiae* in the certiorari proceeding on the Wors case, supra, styled State ex rel. Charles W. Wors v. Hostetter et al., 343 Mo. 945, 124 S. W. (2d) 1072, as representatives of certain building trades and central labor unions in St. Louis and Kansas City, in which they earnestly point out that in putting up buildings ordinarily the general or remote contractor is engaged in erecting the structure on floors or levels above the employees of subcontractors, such as electricians, plumbers, steamfitters, iron workers, plasterers, lathers, glaziers, elevator constructors, marble setters, stone cutters, sheet metal workers, sprinkler fitters, tile and terazzo workers and the like. The latter do their work as the general contractor constructs the building proper floor by floor, but after he has gone on to higher levels. They are subjected to constant hazard of injury through the negligence of the employees of the general contractor working above them. And the argument is made that if subsection (d) of Section 3308 is construed to exempt the general contractor from common-law liability for the negligence of his workmen when his subcontractors have insured their employees under the Compensation Act, the risk of the latter will be increased because the incentive of the former to be careful will be decreased.

Counsel for appellants answer that argument by saying persistent negligence in such structural work resulting in injury to those employed thereon will increase the cost of liability insurance or make it unobtainable, and that that fact is a sufficient deterrent against carelessness. Indeed, on respondent's theory it might be argued the whole Workmen's Compensation Act tends to increase negligence in building operations, for the aggregate outlay in compensation awards is doubtless less than it would be under the common law. We are warranted in concluding that from the fact that employers so uniformly elect to go under the Act. The incentive to employees to go under the Act is that they are compensated without being compelled to prove actionable negligence on the part of the employer, or to overcome the defenses of contributory negligence and assumption of risk. Also, recovery of the award usually is accelerated. [See

Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 1006, 82 S. W. (2d) 909, 912.]

We cannot give the Act a construction which would tend to defeat its purpose, and we think the interpretation put upon it by respondent does that. It is the obvious intent of Section 3308 to cover each contractor and subcontractor on a project (who elects to come under the Act) with reference to all the employees immediately or remotely under him. All such contractors not only are liable under the Act but are protected by it. Subsection (c) of Section 3308 says the principal contractor shall be *deemed* the employer of the employees of his subcontractors and their subcontractors. Subsection (d) provides the immediate (principal) contractor or subcontractor shall be *liable* as an employer of the employees of his subcontractor. And Section 3301 says when the employer and employee are under the Act the former may not be sued at law, and the latter can recover only compensation.

Subsection (d) goes on to provide that all such contractors may be made parties to the compensation proceeding on the application of any party. The liability of the immediate employer is primary; that of the remote employers is secondary in their order. Nevertheless the compensation proceeding may be brought against the latter alone and the award may go against them. In such instances the remote employers may on application have the immediate employer brought into the proceeding, and may on motion recover from him any compensation they have paid under the award. But so far as the injured employee is concerned the liability of the remote employers is not secondary. He can recover against them directly and primarily; it is their business to recoup off of the immediate employer and if they do not they lose. In other words, the principal part of subsection (d) "does not attempt to fix the liability so far as the person injured is concerned . . . but deals with the liability *inter sese* of the persons who are liable to the person injured." [Pruitt v. Harker, 328 Mo. 1200, 1207, 43 S. W. (2d) 769, 771.]

But the last sentence of subsection (d)—stressed by respondent—then adds that no remote employer shall be *liable* as in the section provided if the injured employee was insured by his immediate or any intermediate employer. However, it does not say he shall no longer be *deemed* an employer, and that he shall be considered as outside the protection of the Act. The subsection deals with employers under various degrees of liability ranging from primary liability to non-liability and treats them all as being *within the Act.* There is no disclosure of any legislative intent to outcast a remote employer because he avails himself of a condition contained in the subsection, by requiring his subcontractors to carry liability insurance. Neither is there any discernible intent to prefer one class of employees over another, by permitting the employees of a subcon-

tractor to recover from him compensation for injuries and at the same time sue the remote employer for negligently inflicting them; whereas the direct employees of the same remote employer, perhaps injured in the same accident, would be allowed compensation alone.

Appellants have pointed out certain other consequences which would follow if the statute be construed according to respondent's theory. They say a remote contractor would be *penalized* for complying with the Act, and that is true. For it has been held the object of the statute is to prevent the remote employer from avoiding liability under the Compensation Act through resort to the device of having the work done by irresponsible, independent subcontractors. [Pruitt v. Harker, supra, 328 Mo. l. c. 1207-8, 43 S. W. (2d) l. c. 771.] To forestall that, subsection (d) of Section 3308 makes him liable for compensation under the Act to injured employees of subcontractors unless the latter carry liability insurance. On respondent's theory the remote employer would be worsted by enforcing the aforesaid insurance provision of the subsection. For if he had not he would only be liable for the compensation allowed by the Act; whereas, if he is to be regarded as a "third person" when he requires his subcontractors to carry such insurance: (1) he must absorb the liability insurance charges which the subcontractor is forced to pay and include in his price; (2) the injured employee would recover compensation from the subcontractor's insurance carrier whereupon the latter could exact reimbursement from the remote employer; (3) and the injured employee furthermore could recover common-law damages from the remote employer.

Another incongruity urged by appellants in their brief is this. If, as relator contends, the remote employer can be sued at common law by virtue of the last sentence of subsection (d) of Section 3308 when his subcontractor carries liability insurance and an employee of the latter is negligently injured by employees of the former, then under Section 3309 the subcontractor as immediate employer of the injured employee, by right of subrogation can bring the suit and recover the whole damage therein, retaining the amount he has paid out in compensation plus expenses, and turning over the excess to the employee. And yet under subsection (d) the immediate employer is the one primarily liable, and the remote employer is only secondarily liable, if at all (regardless of how the injury was caused so far as the statute provides) and can recover back from the immediate employer any compensation he (the remote employer) has paid the employee. In other words the immediate employer would recover from the remote employer compensation money for which he, himself, is primarily liable back to the remote employer.

On authority of certain decisions from other states respondent's counsel assert a remote employer is immune from suit at common law only when he is *primarily* liable for compensation; and that when

he is merely *secondarily* liable, as under subsection (d) of Section 3308, he also may be sued for negligence as a third person by the injured employee of a subcontractor. That distinction seems also to be drawn in Langston v. Selden-Breck Construction Co., supra, 225 Mo. App. 1. c. 539, 57 S. W. (2d) 1. c. 476, which was overruled by the same court in Wors v. Tarlton, supra, 95 S. W. (2d) 1199, 1206. We have already pointed out that as regards the injured employee the liability of the remote employer is *primary*; it is only as affecting the several remote employers *inter sese* that the liability is secondary. But aside from that, how can the question whether a remote employer is primarily or secondarily liable under the Compensation Act have any bearing on whether he is subject to suit at common law for the same injuries? As we see it, the only determinative question is whether by any fair construction the *immunity* from suit granted by Section 3301 of the Act is withdrawn from a remote employer merely because he has *complied* with subsection (d) of Section 3308 by making a direct or indirect financial outlay to procure insurance coverage for his subcontractors, so that the employees of the matter may have protection and he may escape liability as the subsection provides?

The question is covered by annotations in 58 A. L. R., p. 894 and 105 A. L. R., p. 594. Counsel for appellants cite eleven cases from other jurisdictions tending to support the views here expressed, six of which are not included in the above annotations. We list the latter in the margin[1] without discussion. Counsel for respondent refer us to eight foreign cases, four of which do not appear in the foregoing annotations. We cite them in the margin[2] but shall summarize only two, by way of illustration. It would unduly extend the opinion to discuss all the cases referred to, based, as they are, on divers statutes containing different provisions.

Matthews v. G. A. Crancer Co. (1929), 117 Neb. 805, 223 N. W. 661, applies respondent's theory of the remote employer's common-law liability but the statute is different. Section 3039, Comp. Stat. Neb. 1922, provides in substance that any person, etc., resorting to any scheme to execute work without being liable to the workmen for compensation shall be included in the term "employer." But the

1. State to use of Hubert v. Benjamin F. Bennett Bldg. Co. (1928), 154 Md. 159, 140 Atl. 52; Dresser v. New Hampshire Structural Steel Co. (Mass., 1936), 4 N. E. (2d) 1012; Leebolt v. Leeper (1929), 128 Kan. 61, 275 Pac. 1087; Phoenix Indemnity Co. v. Barton Torpedo Co. (1933), 137 Kan. 92, 19 Pac. (2d) 739; Lindsey v. Tex. & N. O. Rd. Co. (Tex. Civ. App., 1935), 87 S. W. (2d) 864; Matheny v. Edwards Ice Machine & Supply Co. (1930), 39 Fed. (2d) 70.

2. Matthews v. Crancer Co. (1929). 117 Neb. 805. 223 N. W. 661: Cermak v. Milwaukee Air Power Pump Co. (1926), 192 Wis. 44, 211 N. W., 354; Culbertson v. Kieckhefer Container Co. (1928), 197 Wis. 349, 222 N. W. 249; Houlihan v. Sulzberger & Sons (1918), 282 Ill. 76, 118 N. E. 429.

section further expressly declares that it shall not be construed to cover any contractor who in good faith sublets a portion of his contract, if the principal contractor requires the subcontractor to procure liability insurance. Thus it will be seen the only contractors brought within the Act are those who evade responsibility. Contractors who in good faith compel their subcontractors to carry liability insurance are not *covered* by the Act. The case so holds.

In Houlihan v. Sulzberger & Sons (1918), 282 Ill. 76, 82 et seq., 118 N. E. 429, 431, the employee of an independent contractor was killed through the negligence of the owner of premises while repairing a smokestack thereon. His widow sued the owner for his wrongful death. The owner defended on the ground that both the deceased and the contractor were under the Illinois Compensation Act of 1911 and that it was jointly and exclusively liable with the contractor as a statutory employer under Section 20 of the Act because it had failed to require the contractor to take out compensation insurance. The widow proved the contractor voluntarily was carrying such insurance, so it was ruled the suit was properly brought against the owner as a third person.

But here again Section 20 of the Illinois Act was different from ours and similar to the Nebraska Act. It provided in substance that any owner who contracted to have dangerous work done on his premises without requiring the independent contractor to protect his employees by insurance, and any owner resorting to any fraudulent device to execute such work without being responsible to the workmen for compensation, should be included in the term "employer," and be jointly and severally liable for the compensation. Derelict and fraudulent owners therefore were the only ones brought under the Act. The section did not say, as does subsection (c) of Section 3308 of the Missouri Act, that when work of a specified kind is being done on the premises of an owner by an independent contractor the latter shall be deemed to be the employer of the employees of his subcontractors and their subcontractors engaged in the work. Our statute makes any and all such independent contractors statutory employers—not merely those who are derelict or fraudulent.

The Illinois Act was amended in 1913 to provide that when a person other than the employer caused the injury and that person also was under the Compensation Act, the recovery against him should be limited to the amount of compensation payable under the Act. By further amendment in 1917 the Act was made to apply automatically to *all* employers and employees engaged in the hazardous businesses mentioned in the Act. [O'Brien v. Chicago City Ry. Co., 305 Ill. 244, 248, 263, 137 N. E. 214, 215, 221.] Since then the Act has denied the right to recover common law or statutory damages for the injury or death of any employee against any employer under the Act. [Secs. 202, 204, 206, R. S. Ill. 1935.]

In a supplemental brief respondent stresses two other cases which we shall review briefly. The first, Clark v. Monarch Engineering Co., 248 N. Y. 107, 161 N. E. 436, is easily distinguishable. Prior to 1922 Section 10 of the Compensation Law of New York made an employer liable for compensation only to *his own* employees—not to the employees of his subcontractors—and Section 11 declared *that* liability should be "exclusive and in place of any other liability whatsoever." In 1922 a Section 56 was added to the Article making a general contractor secondarily liable for compensation to the employees of his subcontractors unless the latter carried liability insurance. By this new section alone were employers brought under the Act as regards sub-employees. The New York Court of Appeals in the Clark case simply held the exemption allowed by Section 11 of the earlier law did not apply to the added Section 56 creating the new relationship.

The other case is Artificial Ice & Cold Storage Co. v. Waltz, 86 Ind. App. 534, 146 N. E. 826. This decision supports respondent's contention, but the Indiana Compensation Act is different from ours. It gives (or did when the above case was decided) an employee injured by a third person the option either to claim compensation from his employer or to sue the third person at common law for damages, *but he could not collect both.* The decision also says the Indiana law "does not, in any event, make an employee of a contractor or of a subcontractor an employee of any other person," and in that respect differs from the Massachusetts Act, which makes the employee of a subcontractor also the employee of the general contractor. We have already pointed out that subsection (c) of Section 3308 of the Missouri Act likewise does this latter by providing an independent contractor "shall be deemed to be the employer of the employees of his subcontractors and their subcontractors." Also the Indiana case says (146 N. E. 1. c. 831) if a principal employer could make himself liable for compensation only and avoid common law liability in favor of the injured employee of a subcontractor, merely by failing to require the subcontractor to carry liability insurance, then *there would be no inducement for exacting such insurance!* We cannot understand that reasoning. If the principal employer under our Missouri Act secures compensation for the injured sub-employee by requiring the subcontractor to insure his own liability, then he (the principal employer) is released from *all* liability. Certainly this is sufficient inducement—and the injured employee gets all he could have recovered under the Act from the principal employer in the absence of such insurance.

We know of no state where a conclusion contrary to that announced here has been reached in the face of a statute like subsections (c) and (d) of Section 3308, which brings within the Act all independent contractors doing specified work, and merely exempts them from lia-

*bility* when their subcontractors carry liability insurance covering their own immediate employees. In this connection it is to be noted that these two subsections when read together are not like subsections (a) and (c) of Section 3308. Subsection (a) makes any *owner* having specified work done by contract on his premises a statutory employer and liable to his contractor, his subcontractors and their employees. But subsection (c) says that when the owner has specified work done on his premises by an independent contractor "the provisions of this section *shall not apply to*" (italics ours) such owner. If the subsection had said that of the independent contractors referred to therein the result in this case might be different (though, of course, we are not passing on that question now.) But it does not; and subsection (d) only relieves them of *liability*. The views we have expressed find support in many of the cases cited by appellants.

For the reasons stated, the judgment of the circuit court is reversed. All concur.