**Kenneth F. BAILEY, Appellant,**

v.

**MORRISON–KNUDSEN COMPANY, Inc., a Corporation et al., Respondents.**

No. 52271.

Supreme Court of Missouri, Division No. 1.

Feb. 13, 1967.

William F. Brown, Sedalia, Ben W. Swofford, Kansas City, for appellant, Swofford & Waisblum, Kansas City, of counsel.

A. Lamkin James and James & Butterfield, Marshall and Fred F. Wesner and Frank E. Meyer, Wesner, Wesner & Meyer, Sedalia, for respondents-defendants.

LAURANCE M. HYDE, Special Commissioner.

Action for $50,000.00 damages for personal injuries. The court found, on an agreed statement of facts and exhibits, that plaintiff was a statutory employee of defendant within the meaning of the Workmen's Compensation Law and dismissed plaintiff's action with prejudice. Plaintiff has appealed from the judgment of dismissal.

Defendants were a group of four construction companies engaged as a joint venture in building for the United States Government 150 missile sites and 15 launching control centers in 14 central and western Missouri counties. They were to begin by April 2, 1962, and were required to be finished by November 7, 1963. Defendants were designated as MHPL (using the first letter of each name) and had their headquarters at Sedalia. Because of the terrain and area, and the sites not being served by direct highways, the most practical means for transportation for top supervision was by helicopter. The major part of the construction was performed by subcontractors, including all steel, electrical, fencing, sanitary facilities, drilling, concrete, asphalt surfacing, mechanical, elevators, waterproofing, painting, flooring, ventilation, and transportation, including rolling stock, trucks, automobiles, station wagons, etc., and aircraft. Helicopters were furnished under a contract with Mississippi Valley Helicopters, Inc., of St. Louis (hereinafter called Helicopters). Plaintiff was a regular employee of Helicopters which paid him a monthly salary. His base of operation was the Sedalia Airport where his immediate supervisor was the Chief Pilot of Helicopters but both received instructions and requests for transportation from the superintendent of de-

fendants and defendants' other personnel. However, plaintiff controlled physical operation of the helicopters used, including maintenance, selection of routes and determination of the advisability of flying under existing weather conditions. Plaintiff's duties consisted entirely of piloting helicopters for the purpose of transporting defendants' superintendents and other officials from and to Sedalia and various missile sites then under construction by the defendant in that area. He maintained no regular schedule but was subject to call at all times by the officials of the defendants.

On the day of plaintiff's alleged injury, under orders from the defendants, the plaintiff as pilot took defendants' Superintendent Krumpotic by helicopter to Missile Site E–1, one of the bases under construction, on a flight from Sedalia, Missouri, of about 15 minutes. While there plaintiff took the supervisor of defendants' Site E–1 on a flight over the site in order for him to look over the same from the air. Thereafter he took Superintendent Krumpotic to defendants' Site E–2, about 8 minutes' flying time from Site E–1. Plaintiff's injuries occurred in the course of the landing at Site E–2; both Sites E–1 and E–2, as well as the Sedalia, Missouri, headquarters, were under the exclusive control of the defendants and the trip of Superintendent Krumpotic was in the course of his duties in supervising constructing of the Minutemen Facilities.

■ Both defendants and Helicopters were operating under the Missouri Workmen's Compensation Act and plaintiff has received compensation under the Act on his claim against Helicopters. The basis of plaintiff's claim is that he was not a statutory employee of defendants under Sec. 28 287.040(1) (statutory references are to RSMo and V.A.M.S.) because the ownership, maintenance and operation of helicopters was not the usual and customary business of defendants but was merely incidental and auxiliary thereto. Plaintiff cites such cases as Sheffield Steel Corporation v. Vance (CCA 8) 236 F.2d 928, and Walton v. United States Steel Corporation, Mo.Sup., 362 S.W.2d 617, both of which involved delivery of the defendant's manufactured products by an employee of a trucking company. Defendants also cite such cases as Nabors v. United Realty Co., Mo.App., 298 S.W.2d 474 (removal of a boiler from an apartment house); State ex rel. Long-Hall Laundry and Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S.W.2d 838 (repair of a boiler); Cummings v. Union Quarry and Construction Co., 231 Mo.App. 1224, 87 S.W.2d 1039 (paint and grease cables every two years); Rucker v. Blanke Baer Extract and Preserving Co., Mo.App., 162 S.W.2d 345 (painting smokestacks twice a year); and Eckmayer v. Newport, Mo.App., 267 S.W. 2d 379 (building shelves in shoe store). All of these involve isolated occasional specialty work which could be properly held auxiliary, incidental and ancillary to the business involved.

In this case, transportation of supervisory and other personnel over an area of about ten thousand square miles to and from 165 sites, requiring a high speed, tight scheduling program of work and supervision, was essential to get the work done in the year and a half allowed for its completion. In these circumstances we cannot agree that the use of helicopters was only incidental to and isolated from the business of construction being carried on nor accept plaintiff's reasoning in saying "the fact that the transportation of MHPL's officials to and from the various missile sites by helicopter was important, necessary or even essential to its contract with the government does not bring such function within its usual and customary business." In any event, this case is ruled by our decision in Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, where as here the plaintiff was an employee of a subcontractor from whom he collected workmen's compensation and then sued the general contractor. We said (121 S.W. 2d l. c. 155): "We are, therefore, squarely confronted with the single question whether

the employee of a subcontractor if negligently injured by the general contractor can sue the latter for damages at common law as a third person and at the same time collect compensation from his immediate employer under the Compensation Act—when the immediate employer carries liability insurance covering the casualty and all the other facts bring the case within the Compensation Act." We held the answer was "no."

 In so ruling we said (121 S.W.2d 1. c. 156–157): "We cannot give the Act a construction which would tend to defeat its purpose, and we think the interpretation put upon it by respondent does that. It is the obvious intent of Sec. 3308 [R.S. 1929, now 287.040] to cover each contractor and subcontractor on a project (who elects to come under the Act) with reference to all the employees immediately or remotely under him. All such contractors not only are liable under the Act but are protected by it. * * * There is no disclosure of any legislative intent to outcast a remote employer because he avails himself of a condition contained in the subsection, by requiring his subcontractors to carry liability insurance. Neither is there any discernible intent to prefer one class of employees over another, by permitting the employees of a subcontractor to recover from him compensation for injuries and at the same time sue the remote employer for negligently inflicting them; whereas the direct employees of the same remote employer, perhaps injured in the same accident, would be allowed compensation alone."

We have reaffirmed the Bunner case in two recent cases, Thompson v. H. W. Kroeger Erection Co., Mo.Sup., 380 S.W.2d 339, 343, and Anderson v. Steurer, Mo.Sup., 391 S.W.2d 839, 843. We do so again in this case and hold that plaintiff's only remedy under the facts of this case was under the Workmen's Compensation Act.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.